# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID. No. 1705016524A |
| | ) | |
| DAI'YANN WHARTON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  May 31, 2024
Date Decided:  August 13, 2024

*Upon Consideration of Defendant's Motion for Postconviction Relief,*
**DENIED**

Carolyn S. Hake, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Herbert W. Mondros, Esquire, Rigrodsky Law, Wilmington, Delaware, Rule 61 Counsel for Defendant Dai'yann Wharton.

Stephan Patrizio, Esquire, Dranoff & Patrizio, P.C., Philadelphia, Pennsylvania, *pro hac vice* Rule 61 Counsel for Defendant Dai'yann Wharton.

**JURDEN, P.J.**

# I.    INTRODUCTION

On June 25, 2019, Dai'yann Wharton ("Wharton") was found guilty by a bench trial of Murder First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Conspiracy First Degree, Possession of a Firearm by a Person Prohibited ("PFBPP"), and Concealed Carrying a Deadly Weapon ("CCDW") for the killing of Yaseem Powell ("Powell").[1]   Wharton moves for Postconviction Relief under Superior Court Criminal Rule 61 ("Motion").[2]   For the foregoing reasons, Wharton's Motion for Postconviction Relief is **DENIED**.

---

[1] D.I. 69.  Each docket identification number correlates to Wharton's docket unless specified otherwise.

[2] D.I. 92.

## II. BACKGROUND AND PROCEDURAL HISTORY

A. <u>Background</u>

On March 28, 2017 around 4:00 p.m., Officer Brenda Merced ("Officer Merced") of the Wilmington Police Department responded to a report of an active shooter in the Riverside Area.[3]  When Officer Merced arrived on scene, she found Powell lying on the ground with a gunshot wound to his head.[4]  As Officer Merced attempted to administer first aid, Powell succumbed to his injuries.[5]  On scene, police recovered shell casings, a firearm, and Powell's cell phone.[6]  Powell's cellphone revealed that moments before the shooting he sent a message indicating he was walking behind Wharton and Benjamin Smith ("Smith").[7]  Video surveillance showed Powell being followed by Wharton and Smith.[8]  At the time of Powell's murder, Wharton and Smith were members of the "Shoot to Kill Gang" ("STK"), formed for the purpose of killing members of its rival gang, "Only My Brothers" ("OMB").[9]  Powell was a member of OMB.[10]

Later that same day, Andrew Ervin ("Ervin" or "Twin") sustained a gunshot

---

[3] D.I. 81 ("June 19, 2019 Trial Tr.").
[4] *Id*. at 72.
[5] *Id*. at 21-22.
[6] *Id*. at 121.
[7] D.I. 81 ("June 21, 2019 Trial Tr.") at 28.
[8] *Id*. at 28-29.
[9] *Id*. at 37-39. Smith was STK's gun supplier. *Id*. at 43.
[10] *Id*.

wound to the foot in the area of Heald Street.[11]  Ervin told the police he had been robbed, and that the firearm recovered at the scene belonged to one of his attackers.[12] Ballistic evidence showed the recovered firearm had fired the shell casings recovered near the scene of Powell's murder.[13]

Hours after Powell's murder, Isaiah Baird ("Baird") texted Wharton about Powell's murder to which Wharton replied he already knew about it.[14]  When Baird reported that the firearm had been retrieved by the police, Wharton replied that there was "already a body on it," and that he was scared.[15]  Wharton asked Baird if he thought Ervin's attackers were retaliating because Wharton "hit [their] folks."[16]

Two days after the murder, Wharton and Baird exchanged more text messages about someone telling people that Wharton "killed boul."[17]  When Baird asked about how many people knew, Wharton responded, "before I did it we was all out in front of Twin crib [Ervin's home]."[18]

B. Procedural History

On May 30, 2017, Wharton and Smith were indicted as codefendants for

---

[11] *Id.* at 82.
[12] *Id.* at 82-83. According to Smith, who later testified at Wharton's trial, this was a fabricated story made up by Ervin and Smith to distance Smith from the firearm. *Id.*
[13] State's Resp. to Def.'s Mot. for Postconviction Relief at 6.
[14] D.I. 112 ("June 20, 2019 Trial Tr.") at 68-70.
[15] *Id.* at 86-77.
[16] *Id.* at 77.
[17] *Id.* at 79.
[18] *Id.* at 80.

Murder First Degree, and related firearm charges.[19] On June 19, 2017, the case was assigned to the Trial Judge.[20] Wharton and Smith were then reindicted for Murder First Degree, Conspiracy First Degree, and related firearm charges on September 18, 2017.[21] On August 27, 2018, the Court granted Wharton's Motion to Sever Wharton's and Smith's cases.[22]

i. *Smith's Plea and Sentencing*

On January 30, 2019, Smith pled guilty to Manslaughter and Conspiracy Second Degree.[23] The Plea Agreement contained a Cooperation Agreement, in which Smith agreed to provide his full cooperation–including testifying against Wharton–and in return, the State would make a sentencing recommendation that reflected that cooperation.[24] Smith was sentenced by the Trial Judge on February 28, 2019 as follows: for Manslaughter, 10 years at Level V, suspended after 5 years for 1 year of Level III; for Conspiracy Second Degree, 2 years at Level V, suspended for 1 year at Level II.[25]

ii. *Wharton's Trial*

Prior to trial, on June 12, 2019, Trial Counsel filed a motion *in limine* to

---

[19] D.I. 1.
[20] D.I. 9.
[21] D.I. 17.
[22] D.I. 51.
[23] Smith, D.I. 39.
[24] Cooperation Agreement, Smith D.I. 39.
[25] Smith, D.I. 41.

exclude use of the term "Shoot to Kill" at Wharton's trial.[26] On June 14, 2019, the State informed the Court that the parties agreed to sever Wharton's Gang Participation charge upon Trial Counsel's concession that certain evidence about the STK gang would be admissible for the purpose of establishing Wharton's motive.[27] As a result, Trial Counsel withdrew the motion *in limine*.[28]

On the morning of June 17, 2019, Trial Counsel filed a motion *in limine* to exclude the text messages ("Incriminating Messages") between Wharton and Baird.[29] The Trial Judge denied the motion *in limine* finding insufficient prejudice and gave Trial Counsel additional time to interview the individuals referenced in the Incriminating Messages.[30]

That same day, Wharton rejected the State's plea offer and waived his right to a jury trial.[31] During the colloquy on the waiver of jury trial, Trial Counsel advised the Trial Judge that Wharton regularly expressed his desire to have the Trial Judge sit as finder of fact.[32] Wharton confirmed that he was waiving his right to a jury trial knowingly, intelligently, and voluntarily.[33] The Court advised Wharton that, "once you give up your right to a trial jury, you can't change your mind in the middle of

---

[26] D.I. 63.
[27] D.I. 56.
[28] June 17, 2019 Trial Tr. at 10:2-19; D.I. 65.
[29] D.I. 60.
[30] D.I. 67; June 18, 2019 Trial Tr. at 34.
[31] June 17, 2019 Trial Tr. at 19-20, 13-14.
[32] *Id*. at 11.
[33] June 17, 2019 Trial Tr. 17:21-20:8, 12:4-14:4; D.I. 79.

trial" and asked if Wharton had adequate time to consider the pros and cons of a jury trial versus a bench trial and whether he discussed those pros and cons with counsel.[34] Wharton affirmed that he had.[35] Following the colloquy, the Court accepted Wharton's waiver,[36] and the bench trial commenced on June 19, 2019.[37]

At the conclusion of the bench trial, the Trial Judge found Wharton guilty of Murder First Degree, Possession of a Firearm During Commission of a Felony ("PFDCF"), Conspiracy First Degree, Possession of a Firearm by a Prohibited Juvenile ("PFBPJ"), and Carrying a Concealed Deadly Weapon ("CCDW").[38]

### iii. Wharton's Sentencing

Wharton's sentencing commenced on December 5, 2019.[39] In preparation for the sentencing hearing, the Trial Judge reviewed the record, which included a presentence investigation.[40] At the sentencing hearing, the State recommended an aggregate of 60 years of unsuspended Level V time for Wharton's various offenses.[41] In support of its sentence recommendation, the State argued that although Wharton had no criminal history, he was only fifty days shy of his eighteenth birthday at the

---

[34] *Id.* at 13:5-17.
[35] *Id.*
[36] D.I. 61.
[37] D.I. 81.
[38] *Id.*
[39] D.I. 75.
[40] Sentencing Tr. 6:18-20, 25:23-26:3; D.I. 78. The presentence investigation included, among other materials, an evaluation from Aim Therapeutic Services LLC and an Anger Management for Substance Abuse and Mental Health Certificate of Completion.
[41] *Id.* at 11:8-13, 12:5-9.

time of the murder, and emphasized the excessive cruelty and callousness of the crime.[42] Trial Counsel requested "a sentence near the minimum."[43] He emphasized Wharton's youth,[44] lack of criminal history,[45] and mental health issues.[46] The Trial Judge noted Wharton's youth and lack of criminal history as mitigating factors.[47] The Trial Judge then sentenced Wharton, effective June 14, 2017, to 29 years of unsuspended Level V time[48]–one year above the total minimum mandatory sentence.[49]

### iv. Wharton's Direct Appeal

Wharton appealed his conviction.[50] On appeal, he only raised one ground, arguing the Court abused its discretion by denying his motion to exclude the Incriminating Messages.[51] On January 19, 2021, the Delaware Supreme Court

---

[42] *Id.* at 13:8-15:4, 8:23-10:4.
[43] *Id.* at 21:10-14. The minimum mandatory sentence for Wharton's offenses was 28 years of unsuspended Level V time. *Id.*
[44] *Id.* at 20:1-19, 21:11-14, 22:21.
[45] *Id.* at 23:1-2.
[46] *Id.* at 22:22-23:1. *See also id.* at 19:17-22 ("[T]here is no significant mental illness. He does have some mental health issues as were outlined by her in terms of his ADHD and in terms of oppositional defiant disorder, but other than that, nothing really in–all that bad.").
[47] D.I. 75.
[48] Wharton was sentenced as follows: for Murder First Degree, 25 years at Level V; for PFDCF, 4 years at Level V; for CCDW, 8 years at Level V, suspended for 6 months at Level IV, followed by decreasing levels of supervision; for PFBPJ, 8 years at Level V, suspended for 1 year at Level III; and for Conspiracy First Degree, 5 years at Level V, suspended for 1 year at Level III. *Id.*
[49] Wharton faced a minimum mandatory sentence of 28 years. *See* 11 *Del. C.* § 4209A; 11 *Del. C.* § 1447A(b); *see supra* note 65.
[50] *Wharton v. State*, 246 A.3d 110, 116 (Del. 2021).
[51] *Id.*

affirmed the Trial Judge's discovery rulings and Wharton's conviction.[52] When

evaluating the closeness of the case, the Delaware Supreme Court noted:

> *This case was not close in our view.* Security camera footage showed Powell being followed for approximately eleven blocks and then slain by two individuals. In electronic messages, the victim himself specifically identified those individuals as Wharton and Smith. The footage does not make clear who fired the fatal shot, and so absent the Incriminating Messages, the State needed to rely on Smith's testimony and on circumstantial evidence to establish Wharton as the shooter. Although the State concedes that, without the Incriminating Messages, distinguishing whether Wharton was the shooter or the shooter's companion was a 'fairly close' question, Delaware law recognizes that Wharton and Smith were both culpable because they were charged as co-conspirators. Although the State's main theory was that Wharton was the shooter, there was ample evidence supporting the conspiracy theory. Thus, even without the Incriminating Messages, *proof of Wharton's guilt was overwhelming*.[53]

### v. The Instant Motion and Motion to Recuse

On February 9, 2022, Wharton timely filed the instant Motion.[54] On June 6,

2022, Wharton filed a motion to recuse, requesting the Trial Judge recuse herself

from postconviction proceedings.[55] The Court denied the recusal motion on January

---

[52] *Id.* at 121.
[53] *Id.* at 120 (emphases added).
[54] D.I. 92.
[55] D.I. 97.

23, 2023.[56]

## III.   STANDARDS OF REVIEW

A. Rule 61: Procedural Bars to Relief

Rule 61 permits incarcerated individuals to seek a dismissal of their conviction by showing a lack of jurisdiction or alternative ground that sufficiently establishes a basis for a collateral attack upon the conviction.[57] Before considering the merits of any postconviction relief claims, the Court must first consider whether any procedural bars exist. Rule 61(i) establishes four procedural bars to postconviction relief: (1) motions must be filed within one year of a final judgment or conviction; (2) successive motions for postconviction relief are prohibited unless certain conditions are met; (3) any ground for relief not previously raised is considered waived; and (4) all formerly adjudicated claims are prohibited.[58] Ineffective assistance of counsel ("IAC") claims cannot be raised at any earlier stage in the proceedings, so they are properly presented by way of a motion for postconviction relief.[59]

---

[56] D.I. 117.
[57] Super. Ct. Crim. R. 61(a)(1).
[58] *Id*(i).
[59] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. May 28, 2021) ("On the other hand, ineffective-assistance-of-counsel claims are properly raised in a timely filed motion for postconviction relief.").

Because this is Wharton's first postconviction relief motion and it is timely, his Motion is not procedurally barred, and the Court addresses it on the merits.

B. Rule 61: Ineffective Assistance of Counsel

A successful IAC claim must satisfy the two-pronged test set out in *Strickland v. Washington*.[60] Under *Strickland*, a defendant must demonstrate that (1) trial counsel's performance was objectively unreasonable, and (2) if trial counsel was deficient, there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[61]

The *Strickland* standard carries a strong presumption that counsel conducted himself in a professionally reasonable manner.[62] Mere allegations of ineffectiveness are not enough.[63] Counsel "may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[64] The "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[65] A proper assessment of counsel's performance requires that "every effort be made to eliminate

---

[60] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[61] *Id.*
[62] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).
[63] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[64] *Harrington v. Richter,* 562 U.S. 86, 110 (2011).
[65] *Strickland*, 466 U.S. at 686.

the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[66] A defendant must make and substantiate concrete allegations to overcome this presumption.[67] Notably, the Court does not need to first examine the objectively reasonable prong but may first evaluate the prejudice the defendant purports to have suffered.[68] The "failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel."[69]

## IV.   DISCUSSION

In support of his IAC claims, Wharton argues four separate bases: Trial Counsel was ineffective for (1) failing to file a motion to recuse, (2) allowing Wharton to waive a jury after not preparing enough, (3) failing to exclude Wharton's gang affiliation, and (4) filing a motion to exclude a social media expert and requesting a social media expert.[70] The Court takes each in turn.

A. Failing to File a Motion to Recuse

Wharton argues that because the Trial Judge sentenced his co-defendant the

---

[66] *Id*. at 689.
[67] *Id*; *see Salih*, 962 A.2d at 257.
[68] *Strickland*, 466 U.S. at 697.
[69] *Purnell v. State*, 106 A.3d 332 (Del. 2014) (inner citations and quotations omitted).
[70] D.I. 92. The Court finds its difficult to decipher what Wharton's arguments are across all the various filings to the Court following his submission of his Motion, but does its best to address them.

Trial Judge's impartiality could have reasonably been questioned.[71]  He avers that the Trial Judge learned more about the case through sentencing Smith and that she had already accepted Smith's version of events when conducting Wharton's trial.[72] The State responds that because Wharton's allegations do not support a finding for recusal, Trial Counsel could not be ineffective for failing to file a motion asking for it.[73]

As the State points out, Wharton filed a motion to have the Trial Judge recuse herself from postconviction relief determinations.[74]  The Court conducted the requisite two-part *Los* test analysis.[75]  Importantly, when discussing the objective portion of the *Los* test which requires that a judge be disqualified if the alleged prejudice stems from an extrajudicial source, the Court found that (1) "the alleged bias does not stem from an extrajudicial source" because it would have been from Smith's sentencing (a judicial source), and (2) "no objective observer, upon reviewing the record, would find an appearance of bias sufficient to cause doubt as to the judge's impartiality."[76]  The Court further concluded, "the Trial Judge was, and remains, satisfied she could sit as the finder of fact in Wharton's trial free from bias" and will "remain unbiased and impartial in Wharton's postconviction

---

[71] *Id.*
[72] *Id.*
[73] D.I. 123.
[74] *Id.*
[75] *State v. Wharton*, 2023 WL 634176, at *9 (Del. Super. Jan. 23, 2023).
[76] *Id.*

proceedings."[77]   The Court denied Wharton's motion to recuse.[78]   Given this, Wharton is unable to demonstrate that had Trial Counsel moved to recuse the Trial Judge the outcome would have been different.[79]   Rule 61 Counsel submitted the Motion, and it was denied.  Because Wharton cannot show prejudice, his IAC claim based on Trial Counsel's failure to file a motion to recuse is meritless.

B. <u>Allowing Wharton to Waive his Right to a Jury</u>[80]

Wharton argues his jury trial waiver was not "knowing and intelligent" because Trial Counsel did not inform him that the Trial Judge sentenced his co-defendant, Smith.[81]

The decision to waive a jury trial must be knowing, intelligent, and voluntary.[82]   Generally, a waiver is valid if "the defendant is aware of the right in question and the likely consequences of deciding to forego that right."[83]   "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including background, experience, and conduct of the accused."[84]   The

---

[77] *State v. Wharton*, 2023 WL 634176, at *9 (Del. Super. Jan. 23, 2023).
[78] *Id.*
[79] *Id.*
[80] There appears to be a fleeting mention of *Cronic* but because Wharton fails to argue why *Cronic* applies over *Strickland*, the Court will analyze his claims under *Strickland*.
[81] D.I. 92.
[82] *See State v. Wheeler*, 2022 WL 2134686, at *1 (Del. Super. June 14, 2022).
[83] *Davis v. State*, 809 A.2d 565, 569 (Del. 2002).
[84] *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

decision to waive a jury trial rests with the defendant.[85] The "Defendant has the ultimate authority to make certain fundamental decisions regarding his case, including whether to . . . waive [a] trial by jury . . . ."[86]

*Strickland* is modified slightly in cases where a defendant claims "Trial Counsel ineffectively represented his client by failing to ensure that [a defendant] exercised his right to a jury trial."[87] In this case, Wharton must demonstrate that there is a reasonable probability that, but for Trial Counsel's failure to ensure a proper waiver of the right to a jury trial, he would have exercised that right.[88]

Trial Counsel told the Court that Wharton "has been consistent throughout [the case] that he would like his case to be heart by the Court as opposed to the jury . . ." and that he "met with Mr. Wharton again [that] morning and went back over to him to assure that he was relinquishing his right to a trial by 12 people, and [that] is the way he would like to proceed."[89] Deficiencies in communications between counsel and defendants prior to jury trial waiver can be cured by colloquies,[90] and

---

[85] *State v. Caulk*, 2021 WL 2662250 (Del. Super. June 29, 2021).
[86] *Wheeler*, 2022 WL 2134686, at *6 (citations omitted).
[87] *Id.* at *5.
[88] Id.
[89] D.I. 123; June 17, 2019 Trial Tr. at 11.
[90] *State v. Couch*, 2007 WL 987403 (Del. Super. Mar. 30, 2007), aff'd 945 A.2d 593 (TABLE) (Del. 2008); *see also State v. Taye*, 2014 WL 785033 (Del. Super. Feb. 26, 2013), aff'd 2014 WL 4657310 (Del. Sept. 18, 2014) (holding even if counsel was deficient the deficiency was cured when the trial judge engages in a colloquy with the defendant) and *State v. Hall*, 2016 WL 241192 (Del. Super. Jan. 19, 2016) (holding defendant failed to meet the prejudice prong by arguing that his trial counsel was ineffective for failing to advise him of his right to a jury trial on two firearm possession charges that were severed because the trial judge engaged in a thorough colloquy where they found defendant's waiver knowing and intelligently made).

the Court engaged Wharton in a thorough colloquy which established his waiver was

knowing, intelligent, and voluntary:

> THE COURT: All right. And it's your wish to give up your right to a trial by a jury of 12 and proceed with the Court, meaning me, [to] decide whether or not the State has met its burden of proof?
> THE DEFENDANT: Yes.
> THE COURT: And [Trial Counsel], the charges moving forward are what? I know that the indictment has been whittled down.
> [Trial Counsel recites the charges]
> THE COURT: All right. So, you understand that, Mr. Wharton?
> THE DEFENDANT: Yes.
> THE COURT: I wanted you to understand exactly what charges are going to be on trial here this week. Okay?
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: All right. And you understand once you give up your right to a jury trial, you can't change your mind in the middle of trial. Once we start and we proceed in what's called a bench trial, that's how we'll proceed. Do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: And have you had adequate time to consider the pros and cons of a jury trial versus a bench trial?
> THE DEFENDANT: Yes.
> THE COURT: Have you had adequate time to discuss[] those pros and cons with your counsel?
> THE DEFENDANT: Yes.
> THE COURT: And is it your decision that you wish to give up your right to a trial by jury and proceed with a

> bench trial?
> THE DEFENDANT: Yes.
> THE COURT: Do you have any questions or concerns about that decision?
> THE DEFENDANT: No.
> THE COURT: Okay, I'm going to sign the stipulation of waiver of jury, and we will proceed to a bench trial.[91]

Wharton argues his Trial Counsel's advice was deficient under *Strickland*, but Wharton fails to show that he would have gone to a jury trial and the result would have been different. Rather, he maintained his desire to waive to a bench throughout the pendency of the case.[92] His colloquy establishes his will and desire to waive his jury trial right and the Court found it knowing, intelligent, and voluntary. Because Wharton is unable to establish the prejudice prong, the Court finds this argument deficient and denies his IAC claim on this basis.

C. Trial Counsel was Ineffective for Failing to Exclude Gang Affiliation

Wharton argues that Trial Counsel should not have withdrawn his motion to exclude, and that Trial Counsel's agreement that the motion was moot upon agreement to a bench trial is a "prima facie showing of his ineffectiveness."[93] The State argues that Wharton misunderstands the basis of the motion and explains the motion was regarding the use of the acronym "STK" instead of "Shoot to Kill"

---

[91] June 17, Trial Tr. at 12:4-14:4.
[92] *Id*. at 11.
[93] D.I. 92.

because it would have been prejudicial otherwise, and the waiver to a bench trial made the motion moot because the Trial Judge already knew what the acronym stood for.[94]

Trial Counsel was not ineffective for withdrawing a moot motion. The Trial Judge was aware of what "STK" stood for, so the motion became moot when Wharton chose to waive his right to a jury trial. Wharton seems to argue the motion sought to exclude all references to gang affiliation, but that is incorrect. Therefore, the Court does not find Trial Counsel was ineffective for withdrawing a motion that became moot once Wharton waived a jury trial and denies his IAC claim on this basis.

D. Trial Counsel was Deficient for Filing a Motion to Exclude Social Media Evidence and Requesting a Social Media Expert

Wharton argues that it was objectively unreasonable for Trial Counsel to think the Incriminating Messages were a social media issue.[95] The State responds by arguing that Wharton again misunderstands the motion and that it was filed to exclude certain evidence, not social media evidence.[96] Further, the State avers that regardless of the usage of the term "social media," Trial Counsel's decision to challenge the State's evidence was strategic and thus falls under *Strickland*.[97]

---

[94] D.I. 123.
[95] D.I. 92.
[96] D.I. 123.
[97] *Id.*

The decision to file or withdraw a motion is a strategic tactical decision what rests with the attorney.[98]  Strategic decisions made by an attorney fall within the purview of *Strickland* and must address both the prejudice and the performance prong.  Trial Counsel's decision to file the motion was not unreasonable, and Wharton cannot overcome the prejudice prong because he cannot show that his trial would have ended differently had Trial Counsel filed a different motion using different terminology.  Therefore, the Court denies Wharton's IAC claim on this basis.

## V.    CONCLUSION

For the foregoing reasons, Wharton's Motion for Postconviction Relief is **DENIED.**

/s/ Jan R. Jurden
Jan R. Jurden, President Judge

Original to Prothonotary

---

[98] *Cooke v. State,* 977 A.2d 803, 840 (Del. 2009).